CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 20 2005

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DELORES SIMMONS, as Administrator )
of the Estate of Harrie Simmons, Jr. )
)     Civil Action No. 7:05CV00053
Plaintiff, )
)     **MEMORANDUM OPINION**
v. )
)
GENE M. JOHNSON, et al., )     By: Hon. Glen E. Conrad
)     United States District Judge
Defendants. )

This action under 42 U.S.C. § 1983 involving the death of an inmate at Wallens Ridge State Prison is before the court on the defendants' motions to dismiss. For the reasons stated below, the court will deny the defendants' motions.

## Factual and Procedural Background

On January 31, 2003, Harrie Simmons died in his cell at Wallens Ridge State Prison after hanging himself with a bedsheet. Prior to his death, Mr. Simmons allegedly attempted to commit suicide twice and, in a separate incident, intentionally injured himself. On January 28, 2005, the plaintiff, Mr. Simmons' mother and administrator of his estate, brought the present action against Gene M. Johnson, the Director of the Virginia Department of Corrections; Stanley Young, the Warden of Wallens Ridge; and numerous correctional officers, nurses, mental health professionals, and employees at Wallens Ridge. The plaintiff's complaint includes the following four claims: (1) all of the defendants, except Johnson and Young, violated Mr. Simmons' constitutional rights through their deliberate indifference to his serious medical needs; (2) defendants Johnson and Young incurred supervisory liability through the creation of a policy and custom which allowed inmates to be deprived of adequate medical care and their deliberate indifference in supervising and training their codefendants; (3) all defendants participated in a

conspiracy to violate Mr. Simmons' civil rights; and (4) Dr. Zyed Zafar Ahsan committed medical malpractice under VA. CODE ANN. § 8.01-50, resulting in the wrongful death of Mr. Simmons. The defendants have filed motions to dismiss the plaintiff's claims.

## Discussion

### I. Standard of Review

A complaint will be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) only when the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992). In considering a motion to dismiss, the court accepts all well-pleaded allegations as true. The court also views the complaint in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411 (1969).

The United States Court of Appeals for the Fourth Circuit recently reaffirmed this standard in De'Lonta v. Angelone, 330 F.3d 630 (4th Cir. 2003) (citing Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)).[1] In De'Lonta, the Court determined that an inmate plaintiff who asserted that the defendants knew she suffered from a psychological disorder for which she was receiving treatment; that the defendants had abruptly terminated her treatment, resulting in her repeated attempts to mutilate herself; and that the defendants refused to provide medical treatment for her, had pled enough to surmount the motion to dismiss. Id. at 634. In reaching this

---

[1] Motions to dismiss are appropriate only when, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Id. at 633.

2

conclusion, the Court examined the record to determine whether it demonstrated beyond doubt that the plaintiff could not prove her allegations. Id.

The Fourth Circuit provided further instruction in Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003). The Court indicated that words tracking the statutory language "are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." Id. at 765. Consequently, this court examines the complaint to ensure that the plaintiff has alleged sufficient facts to support her legal assertions.

## II. Exhaustion of Administrative Remedies

The court will first address the defendants' argument that the plaintiff's claims should be dismissed for failure to exhaust administrative remedies, pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The defendants contend that the plaintiff, as the administrator of Mr. Simmons' estate, is barred from asserting any claims that could have been brought by Mr. Simmons, himself, since Mr. Simmons did not exhaust his administrative remedies.

The court agrees with the plaintiff that the defendants' argument is without merit. The plain language of the PLRA provides that its exhaustion requirement only applies to actions filed by prisoners:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a <u>prisoner confined in jail, prison, or other correctional facility</u> until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis added). The PLRA defines "prisoner" as any person "incarcerated or detained." 42 U.S.C. § 1997e(h). Since the present action was filed following

Mr. Simmons' death, he was no longer a confined prisoner at the time of filing. Therefore, the plaintiff's claims, filed on Mr. Simmons' behalf, are not subject to the PLRA's exhaustion requirement.[2] Accordingly, the court must consider whether the allegations in the plaintiff's complaint are sufficient to survive the defendants' motions.

## III. Count One – Deliberate Indifference to a Serious Medical Need

The first count alleges that the defendants were deliberately indifferent to the serious medical needs of Mr. Simmons. Deliberate indifference is a significantly higher standard than negligence, and thus requires the plaintiff to allege more than the standard duty, breach, and causation elements. See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). To establish deliberate indifference, the plaintiff must show that the defendants actually appreciated the risk factors in a given case. Even when such subjective recognition is shown, the defendants are responsible "only to the extent they make the causal inference that the circumstances as they perceived them created a substantial risk of serious harm." Id. at 304. At this stage in the current litigation, it is not necessary for the plaintiff to adduce every fact that supports her claim for relief. Comet Enterprise Ltd. v. Air-A-Plane Corp., 128 F.3d 855, 860 (4th Cir. 1997). She must, however, allege facts and law such as would support her claim for relief.

In the plaintiff's pleadings, she alleges that the "defendants were aware that Mr. Simmons presented ... a suicide risk, and that he was experiencing serious mental health problems," which

---

[2] The court notes that in two unpublished opinions, the United States District Court for the Eastern District of Louisiana and the United States District Court for the Western District of Tennessee reached the same conclusion. See Netters v. Tenn. Dept. of Correction, 2005 WL 2113587 (W.D. Tenn., August 30, 2005); Greer v. Tran, 2003 WL 21467558 (E.D. La., June 23, 2003). The court also notes that based on the plain language of the statute, several circuits have concluded that the exhaustion requirement does not apply to cases filed by former prisoners, even when they challenge incidents that occurred prior to their release. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002); Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998); Doe v. Washington County, 150 F.3d 920, 924 (8th Cir. 1998).

4

were potentially exacerbated by his erroneous impression that he was HIV positive. (Complaint at 8-9). She further alleges that they "deliberately refused to provide appropriate treatment, and deliberately failed to protect Mr. Simmons from harm," despite his requests to be treated in the facility's mental health unit." (Complaint at 11). These pleadings give the defendants notice of the claim and provide sufficient facts to support the plaintiff's allegations.

The defendants assert that these pleadings are conclusory and fail to allege sufficient facts to state a claim. The defendants posit that the plaintiff will be unable to prove an essential element of her deliberate indifference claim because she has not alleged facts to show that the defendants actually appreciated the risk that Mr. Simmons posed to himself. However, the plaintiff does assert that the defendants knew of Mr. Simmons' two suicide attempts and his anxiety regarding his HIV status. The plaintiff's assertions are sufficient to survive the defendants' motion to dismiss.

Defendant Dr. Ahsan argues that, as to him, the claim of deliberate indifference cannot stand. As the United States Supreme Court, the Fourth Circuit, and this court have all ruled, "[q]uestions of medical judgment are not subject to judicial review. Moreover, mere malpractice does not state a federal claim, nor does mere negligence in diagnosis." Shelton v. Angelone, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001) (citing Estelle v. Gamble, 429 U.S. 97, 102 (1976); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)). In Estelle, the Supreme Court wrote: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." 429 U.S. at 106. The Court specifically did not exempt prison doctors from the ambit of deliberate indifference, but rather stated that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'" and explained

5

that such indifference may be manifested by prison doctors in their responses to prisoners' needs. Id. at 104-05.

The plaintiff claims that Dr. Ahsan was generally unresponsive to Mr. Simmons' medical needs, except to prescribe drugs to treat psychotic episodes, which the doctor did not further monitor, and that Dr. Ahsan failed to make any subsequent inquiries into Mr. Simmons' condition. Accepting the plaintiff's allegations as true, the court concludes that such allegations are sufficient to state a claim for deliberate indifference against Dr. Ahsan.

### IV. Count Two – Supervisory Liability

The second count alleges that Defendants Johnson and Young retain supervisory liability for the deliberate indifference exhibited by the employees they oversaw. Supervisory liability is appropriate where the plaintiff establishes the following three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). A supervisor may be held liable for constitutional violations because "supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). However, to prevail on a supervisory liability claim, the plaintiff must demonstrate both a pervasive and unreasonable risk of harm and that the supervisor failed to take action in a manner that amounts to deliberate indifference. Id. Such proof will be difficult to make, because "[o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents," and the proof of "continued inaction in the face of

6

documented widespread abuses" may be insufficient to survive summary judgment. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984).

The inquiry as to supervisory liability is fact intensive–it requires a determination that the alleged deprivation is objectively serious and that the official had a sufficiently culpable state of mind. See Brown v. Harris, 240 F.3d 383, 388-90 (4th Cir. 2001). As the Fourth Circuit has said, the issue as to whether the defendants' conduct "rose to the level of deliberate indifference" is "generally one of fact, not law." Avery v. County of Burke, 660 F.2d 111, 114 (4th Cir. 1981). The plaintiff alleges that the defendants failed to prevent a substantial risk of serious harm, and that they did so maliciously and intentionally.

Applying the three-part Shaw test to this case, the plaintiff's allegation of intentionality satisfies the knowledge component. Whether the defendants were deliberately indifferent is largely a factual issue, but the plaintiff has asserted that the defendants created a policy and custom that sanctioned the provision of inadequate medical care to inmates. The existence of a causal link between the inaction and the injury is asserted in the statement that "[t]he acts and omissions ... proximately caused Harrie Simmons, Jr.'s suffering, injuries and death." These allegations satisfy the plaintiff's minimum pleading obligations, and she will be permitted to move forward with this claim.

## V. Count Three – Conspiracy to Violate Civil Rights

Count Three alleges that the defendants conspired to violate Harrie Simmons' civil rights. The proof of a conspiracy to violate the civil rights of another must meet a "weighty burden," but to withstand a motion to dismiss, the pleadings must meet only the basic standard established in Conley, supra. See also Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) (explaining that the plaintiff must show that the defendants acted "jointly in concert and that

7

some overt act was done in furtherance of the conspiracy which resulted in ... deprivation of a constitutional right"). The plaintiff alleges that all defendants committed overt acts in furtherance of the conspiracy, and that all defendants knowingly participated in the conspiracy. The plaintiff submits specific categories of conduct that comprised these overt acts of the defendants, including their actual participation or acquiescence and failure to intervene in the deliberate indifference to Mr. Simmons' medical needs. The allegation that the defendants either destroyed or discarded a portion of Mr. Simmons' medical records provides further factual grounding for the claim.

Central to a conspiracy charge under § 1983 is the allegation of an agreement. See Sales v. Murray, 862 F. Supp. 1511, 1517 (W.D. Va. 1994). See also Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989). There must be an allegation of a meeting of the minds among the conspirators, for without such an allegation, "the independent acts of two or more wrongdoers do not amount to a conspiracy." Sales, 862 F. Supp. at 1517. Although there is no direct allegation of an agreement in the complaint, the plaintiff states that the defendants knowingly participated in the conspiracy and that they acted jointly and in concert to violate Mr. Simmons' civil rights and cover up their actions. The allegations as to the defendants' improper treatment and maintenance of Mr. Simmons' medical records suffice to meet the plaintiff's factual pleading obligation.[3]

The plaintiff further alleges that those defendants who were not active participants in the conspiracy were witnesses to the deliberate indifference of others and failed to intervene. The Fourth Circuit held in Hafner v. Brown, 983 F.2d 570 (4th Cir. 1992), that "[a]cquiescence can

---

[3] The court notes that without discovery on the alleged cover-up, the plaintiff's attorneys would be in the position of having to allege facts that they could not yet verify, thus exposing them to sanctions.

amount to a conspiracy agreement." Id. at 577-78. Thus, the plaintiff's allegations are sufficient to withstand a motion to dismiss.

As the Court held in Hinkle, the plaintiff "need not produce direct evidence of a meeting of the minds, [but] must come forward with *specific circumstantial evidence* that each member of the alleged conspiracy shared the same conspiratorial objective." 81 F.3d at 421 (emphasis added). It is unclear whether the plaintiff in this case will be able to prove that there was both an agreement and a common conspiratorial objective. However, that is not the relevant inquiry on a motion to dismiss.

The defendants also allege that the plaintiff's conspiracy claim is untimely. This claim is predicated on the residual Virginia statute of limitations for personal injury actions, which is two years. See Owens v. Okure, 488 U.S. 235, 250 (1989) ("courts considering § 1983 claims should borrow the general or residual statute for personal injury actions"); Billups v. Carter, 268 Va. 701, 710 (2004); VA. CODE ANN. § 8.01-243(A) (2005). The defendants argue that the claim accrued when Simmons learned of the conspiracy, and that this occurred prior to January 28, 2003. As a result, the defendants contend that the filing of the claim on January 28, 2005 fell outside the statutory period.

As the Fourth Circuit has recognized, "[w]hile the statutory limitations period for § 1983 actions is borrowed from state law, the time of accrual of a civil rights action is a question of federal law." Nat'l Adver. Co. v. Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991) (internal quotation omitted). The wrong of which the plaintiff complains is the deprivation of Mr. Simmons' civil rights, resulting in his unfortunate death. Although some violations must have occurred prior to the few days before Mr. Simmons' death, the chief deprivation alleged is that the defendants provided Mr. Simmons with the instrumentalities he used to commit suicide and

9

that they were deliberately indifferent to his medical needs, a course of inaction that culminated in his act of desperation.

This case is distinguishable from the line of employment cases under § 1983, which hold that "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." Chardon v. Fernandez, 454 U.S. 6, 9 (1981); Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980). In those cases, the plaintiffs had actual, even written, notice of the defendants' actions. See Chardon, 454 U.S. at 7-8. In the present case, the degree of Mr. Simmons' comprehension is in dispute, and the estate had notice of the deprivations only after Mr. Simmons' demise.

Instead, this case is best analogized to United States v. Kubrick, 444 U.S. 111 (1979), and Nasim v. Warden, Md. House of Correction, 64 F.3d 951 (1995), which stand for the proposition that "for a cause of action to accrue, it is critical that the plaintiff know that he has been hurt and who inflicted the injury." Nasim, 64 F.3d at 955. Unlike the injured veteran in Kubrick and the prisoner in Nasim, Mr. Simmons did not appear to have either actual or inquiry notice that a cause of action had accrued to him. He was apparently unaware of at least some of his injuries, namely, he was allowed to harbor the erroneous belief that he was HIV positive and would have had no reason to know that he should have been receiving mental health treatment instead of being dismissed with literature about mental health issues. The plaintiff alleges that Mr. Simmons "regularly requested" to be seen in the mental health unit, which may indicate that he knew of the deprivations, but that is a factual question which the parties must resolve through further development of the evidence.

The defendants note that in two unpublished opinions, the Fourth Circuit has required plaintiffs to allege specific, nonconclusory facts in order to survive a motion to dismiss. Harris v.

City of Va. Beach, 11 Fed.Appx. 212, 215 (4th Cir. 2001); Holt v. Med. Coll. of Va., 1996 U.S. App. LEXIS 5293 (4th Cir. 1996). Although the defendants are justified in their argument that factual predicates for the conspiracy claim are scarce in this complaint, the facts alleged by the plaintiff are sufficient to withstand the defendants' Rule 12(b)(6) motions.

## VI. Count Four – Medical Malpractice and Wrongful Death

The plaintiff's complaint includes a fourth count against Dr. Zyed Zafar Ahsan for medical malpractice and wrongful death, alleging that Dr. Ahsan was negligent and deviated from the standard of care owed to Mr. Simmons. This pendent state-law claim is premised on VA. CODE ANN. § 8.01-50 et seq., the wrongful death statute in Virginia. Dr. Ahsan argues that he has sovereign immunity as to any state claim the plaintiff has alleged against him.

Under certain circumstances, a prison physician may enjoy sovereign immunity. See Coppage v. Mann, 906 F. Supp. 1025, 1047-48 (E.D. Va. 1995). However, in this case, the court believes that consideration of Dr. Ahsan's motion to dismiss on the ground of sovereign immunity is premature in that the parties have submitted very little information as to the nature of the employment relationship between Dr. Ahsan and the Commonwealth.

## Conclusion

While it is true that the plaintiff has alleged few facts in support of her claims, the plaintiff's allegations are sufficient to survive the defendants' motions to dismiss. The defendants have not shown that the plaintiff is unable to prove any set of facts that would entitle her to relief. Accordingly, defendants' motions shall be denied.

11

The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 20th day of October, 2005.

_/s/ Jackson L. Kiser_
United States District Judge